## Case No. 804.

BALDWIN et al. v. SCHULTZ et al.

[9 Blatchf. 494;[1] 5 Fish. Pat. Cas. 75; 2 O. G. 315, 319.]

Circuit Court, S. D. New York. Sept. 26, 1871; March 30, 1872.

PATENTS FOR INVENTIONS— HATS — COATING FOR TEXTILE FABRICS — NOVELTY AND UTILITY — EQUITY—INJUNCTION—AFFIDAVIT.

1. The reissued letters patent granted to the Modena Hat Company, as assignees of Henry Loewenberg, the inventor, April 30th, 1867, for an "improved fabric for hats, bonnets, &c.," on the surrender of original letters patent granted to said Loewenberg, February 28th, 1865, the claim of such reissue being, "The new compound fabric, hereinbefore described, having substantially a foundation of interlaced threads, and a surface composed of fibrous material, stiffened by gelatinous matter, and consolidated by pressure," are not infringed by the use, as a fabric, of muslin, having interlaced threads, but no surface of fibrous material, either as part of the fabric or artificially applied.

2. The letters patent granted to John L. Kendall and R. H. Trested, February 9th, 1869, for an "improved compound for coating textile fabrics for manufacture of hats and bonnets," the claim of such patent being for a compound composed of white French zinc, or its equivalent, or lead, ground in a colorless and inodorous oil, such as castor oil, and collodion, made by dissolving in ether gun cotton saturated with alcohol, are not infringed by the use of a compound not containing oil or collodion, but containing zinc white, starch, glue, glycerine, and damar.

3. In the claim of the letters patent granted to S. A. Blake, December 24th, 1861, for an "improvement in bonnets," namely, "A bonnet, cap, or other head covering, the body of which is made of two or more thicknesses of muslin, or other suitable fabric, shaped or formed with a series of raised or embossed stripes, in imitation of straw, or other braid, by means of suitable dies, in the manner herein set forth," the word "body" means a part of the bonnet which does not include the tip or crown-piece of the bonnet, and means that part of the bonnet to which the tip is united, in the finished bonnet.

4. According to the description in the specification of the Blake patent, the product of the action of the dies is the completed body of a

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus is from 9 Blatchf. 494, and the statement of facts from 5 Fish. Pat. Cas. 75.]

bonnet, embossed in imitation of straw, and fit for use as the body of a bonnet, in the shape given to it by the dies, and without further ornamenting or covering its surface, and is not merely a frame, or carcass, or skeleton, requiring to be afterwards covered or ornamented, to make its exterior surface so comely and presentable as to be salable as a bonnet, and is not merely a fabric having the completed exterior surface necessary in the bonnet salable as such, but not shaped into its ultimate shape by dies, and requiring further manipulation to put it into such ultimate shape.

5. The proper construction of the claim of that patent is, that it claims a bonnet the body of which is embossed in imitation of straw or other braid, by dies, which, at the same time, give to it its ultimate shape, such body being made of two or more thicknesses of muslin or other suitable fabric, united by starch or other suitable adhesive and stiffening substance.

6. The article produced according to the Blake invention is new and useful, an improvement in the trade, and patentable.

7. It is an infringement of the Blake patent to make a bonnet of three thicknesses of muslin, united by starch, and shaped by dies, which, at the same time, emboss it in imitation of straw braid, although a coating is put on the muslin-frame before it is subjected to the final action of the dies.

8. A hat may infringe the Blake patent, and yet be seamless throughout.

9. The essence of the invention of Blake being, that the product of the action of the dies to which the thing is last subjected, is the completed body of the bonnet, embossed in imitation of straw, and shaped and ready for practical use, as the body of a bonnet, without further covering or ornamentation, the patent is infringed if the last embossing die gives the ultimate shape to the bonnet, although such dies may be of the same shape as a die to whose shaping action the bonnet has been previously subjected.

[In equity. Bill by Nathan A. Baldwin and others against Joseph Schultz and Leopold Hecht, for infringement of letters patent. Dismissed. On a rehearing, decree is rendered for complainants.

[Final hearing on pleadings and proofs. Suit brought on three several letters patent, the property of complainants: (1) Letters patent for an "improved fabric for hats, bonnets," etc., granted to Henry Loewenberg, February 28, 1865, assigned to the Modena Hat Company, and reissued to them April 30, 1867; (2) letters patent for an "improved compound for coating textile fabrics for manufacture of hats and bonnets," granted to L. Kendall and R. H. Trested, February 9, 1869; and (3) letters patent for an "improvement in bonnets," granted to S. A. Blake, December 24, 1861. The nature of the inventions in controversy is sufficiently set forth in the opinion.] [2]

Solomon J. Gordon, for plaintiffs.
Thomas B. Hewitt, for defendants.

BLATCHFORD, District Judge. This suit is brought on three letters patent: (1) A patent granted to S. A. Blake, December

24th, 1861, for an "improvement in bonnets;" (2.) A reissued patent granted to the Modena Hat Company, as assignees of Henry Loewenberg, the inventor, April 30th, 1867, for an "improved fabric for hats, bonnets, &c.," on the surrender of an original patent granted to Loewenberg, February 28th, 1865; (3.) A patent granted to John L. Kendall and R. H. Trested, February 9th, 1869, for an "improved compound for coating textile fabrics for manufacture of hats and bonnets."

The defendants are manufacturing and selling stamped hats, made in imitation of straw braid. Such hats are made by the following process: The frame is made of three-ply buckram, that is, three thicknesses of muslin, united by starch, formed into the shape of a hat by the use of smooth, heated dies of the desired shape. The frame thus formed is then coated with a compound, made of two parts of zinc white and one part of boiled starch, to which is added a mixture of glue and glycerine, (consisting of twenty parts of dissolved glue to one part of glycerine,) equal to one-half of the quantity of starch used. After these ingredients have been thoroughly mixed together, there is added one one-hundredth part of damar, which has been previously dissolved in benzine. The whole mixture is then passed through a paint mill, and is then applied with a brush to the outside of the buckram hat frame. Two coats of the compound are thus applied, and, before the second coat has become dry, a small quantity of powdered soapstone is shaken through a sieve over the outer surface of the compound. After the hat has become dry, it is subjected to the pressure of two cold dies, which are of the same shape as the hat, except that the lower die, or female die, which comes in contact with the outer surface of the hat, is engraved in imitation of straw braid. The male die, or upper die, is smooth. The hat, with the compound upon it, is placed in the engraved female die, and a square piece of india rubber, large enough to cover the whole inner surface of the hat, and to come out beyond the brim of the hat, is laid over the inner surface of the hat. The upper, or smooth, die is then brought down with great force on the india rubber, which regulates the pressure, and makes it uniform over the entire surface of the hat. By this means, the surface which has upon it the compound, is pressed into the engraving of the female die, and takes and retains the counter shape of the female die. It is claimed, that the defendants, in making and selling hats made by the process thus described, infringe the three patents referred to.

The reissued patent of 1867 to the Modena Hat Company claims, "the new compound fabric, hereinbefore described, having substantially a foundation of interlaced threads, and a surface composed of fibrous material, stiffened by gelatinous matter, and consolidated by pressure." The specification indi-

cates cotton flannel as a material consisting of interlaced threads covered with a fibrous material. To stiffen such material by gelatinous matter, it suggests saturating it with the glutinous solution in water of soluble glass, and drying the saturated cloth. To consolidate the material by pressure, it suggests the action on it of a die or dies placed in a suitable press. The foundation of interlaced threads is described as giving strength to the fabric. The saturated fibrous material is described as forming a pulpy layer capable of receiving and retaining a highly embossed surface. It is manifest that the defendants do not infringe this patent. Although they use muslin, which has interlaced threads, yet their fabric has no surface of fibrous material. They do not use cotton flannel, nor do they put upon their muslin an artificial surface of flock or ground cotton.

The patent of 1869, to Kendall and Trested, describes and claims, as their invention, a compound to be applied as a facing or coating to buckram frames, and similar textile fabrics, and to paper. The ingredients of this compound are stated to be, white French zinc, or its equivalent, or lead, ground in a colorless and inodorous oil, such as castor oil, and collodion, made by dissolving in ether gum cotton saturated with alcohol. The mixture forms a thin white paste, and its merit is described as consisting in the fact, that, when applied with a brush as a coating, it dries almost instantly, has a soft, polished surface, is pliable, can be struck up by dies without injuring the surface, and is water-proof. The defendants do not use this compound. Their compound contains no oil and no collodion. The patentees add to zinc white, oil and collodion. The defendants add to zinc white, starch, glue, glycerine, and damar. In using this compound, the defendants do not infringe the Kendall and Trested patent.

The serious contest in this case is as to the Blake patent. The specification of that patent says: "This invention consists in a bonnet, cap, or other head covering, the body of which is made of two or more thicknesses of muslin or other suitable fabric, united by some adhesive and stiffening substance, and shaped and formed into a series of raised stripes, by means of suitable dies, in such a manner that the sewing together of said stripes is obviated, and that such bonnet, cap or head covering is a perfect imitation of the ordinary bonnets or caps made by sewing together a large number of narrow braids of straw or embossed stripes of muslin. * * * In order to form a bonnet, I make a sheet, by uniting two pieces of muslin or other material, by means of starch or other suitable adhesive material. I prefer rice starch for this purpose, as it makes a good stiffening. I then cut from this sheet a single piece, or two pieces, of proper shape to form the bonnet and tip, and, after dampening them and putting them as nearly as practicable into form over a suitable mould or former, I subject them to the action of suitable dies, which may be inserted into a press such as represented in figure 4. The female die is provided on its inner surface with a number of creases or grooves formed according to the stripes to be produced on the bonnet. The male die is perfectly smooth on its upper surface, and it is covered with a layer of paper, mill board, or other suitable material, which, when exposed to the pressure of the female die, will readily adapt itself to the inner surface of said die, the whole being arranged similar to the machinery generally used for embossing paper, leather, etc. The blank is now placed upon the male die, and the female die is brought down by means of a screw, so that the fabric assumes the shape of the male die, and at the same time the desired stripes are embossed on its surface. When taken from the press, the surface of the fabric presents a series of stripes, a, such as represented in figures 2 and 3 of the drawing, resembling closely the stripes or braids from which ordinary straw bonnets are made. In forming a bonnet, cap or other head dress by this process, it is indispensable that the blank, which is to form the body of the bonnet or other head covering, is cut open on one side, in order to place it on the die in such a manner that all its parts are exposed to the action of the dies. The tip, which may be pressed or embossed separately from the body of the bonnet, or simultaneously with it, is cut out and inserted after the ends of the body have been joined. The embossing itself gives to the muslin or other fabric the required stiffness, and a bonnet made according to my invention is superior in lightness, and in its graceful look, to bonnets made according to the ordinary method, and, furthermore, much time is saved, since the sewing together of the several stripes is obviated. It is obvious, that, by changing the form of the dies, bonnets of different shapes, or caps, or other head coverings, can be made in a manner similar to the one above specified. I do not claim as my invention the within described manner of embossing muslin, substantially the same method having been practised long ago; but, having thus fully described my invention, what I claim as new and desire to secure by letters patent, is: A bonnet, cap, or other head covering, the body of which is made of two or more thicknesses of muslin or other suitable fabric, shaped or formed with a series of raised or embossed stripes, in imitation of straw or other braid, by means of suitable dies, in the manner herein set forth."

The first question is as to the proper construction of the claim of the Blake patent. It is to be observed, that Blake puts no coating or covering upon the exterior surface of the fabric of his head covering. The stripes are embossed directly upon one of the thicknesses of muslin. It is also to be noted, that

the specification of the patent draws a distinction between the body of the bonnet and the tip or crown-piece of the bonnet. According to the language used in the specification, the body and the tip, taken together, form the bonnet. The sheet, made of two or more thicknesses of muslin, united to each other by a suitable adhesive material, is the sheet from which the body and the tip are cut, either in a single piece or in two pieces. The claim is to a bonnet, in which the body thereof is made of two or more thicknesses of fabric shaped or formed with a series of raised or embossed stripes, in imitation of straw or other braid, by means of suitable dies, in the manner set forth. The word "body," in the claim, must be construed to mean a part of the bonnet which does not include the tip, and to mean that part of the bonnet to which the tip is united in the finished bonnet. It is the "body" which is to be made of two or more thicknesses of muslin or other suitable fabric, and it is the "body" which is to be shaped or formed with a series of raised or embossed stripes, in imitation of straw or other braid, and it is the "body" which is to be so shaped or formed by means of suitable dies, in the manner set forth in the specification.

The defendants have put in evidence six prior patents, as affecting the Blake patent, to show the state of the art, as bearing on the question of the construction of the specification of that patent, and to be used to attack the novelty of Blake's invention, and to aid in determining the question of the infringement of that patent. The date of Blake's invention is shown to be the very end of the year 1859. The six patents referred to are as follows: (1.) English patent to Alexander Daninos, dated February 4th, 1829, specification enrolled August 4th, 1829, for an invention "for the manufacture of improved hats and bonnets in imitation of Leghorn straw hats and bonnets;" (2.) English patent to Richard Archibald Brooman, dated April 11th, 1854, specification enrolled October 9th, 1854, for an invention "for improvements in the manufacture of hats;" (3.) Letters patent of the United States, granted to William Osborn, August 19th, 1856, for an "improvement in machinery for pressing bonnets and bonnet frames;" (4.) English patent to Gustavus Palmer Harding, dated July 14th, 1857, specification enrolled January 14th, 1858, for an invention "for improvements in the manufacture of hats, caps and other coverings for the head;" (5.) French patent to Roger and Ledion, granted September 15th, 1859, for the inventions described in the English letters patent to Marc Antoine Francois Mennons, next mentioned; (6.) English patent to Marc Antoine Francois Mennons, dated November 13th, 1860, specification enrolled May 8th, 1861, for an invention "for an improved manufacture for coverings for the head," being a communication from Gustave Victor Roger, a resident of France.

The Daninos patent employs two or three thicknesses of woven material, glued or cemented together, and treated by a waterproof composition. The hat is made of three pieces, the brim or rim being one piece, the sides another piece, and the top or crown another piece. Each piece is embossed or figured with an imitation of the plaiting and sewing seen on the surface of a real Leghorn straw hat. The brim or rim is embossed on both sides, an engraved plate being used for each side, and the embossing being done simultaneously by the two plates. The piece for the sides is embossed by being passed between a brass roller engraved with the design and a hard-wood roller covered with pasteboard. The piece for the crown is embossed by a brass plate. The top of the sides is glued or cemented to a rim which is turned up at the outer circumference of the crown, and the sides are also cemented or glued to a rim turned up on the brim. The characteristic distinction between a hat made according to the Daninos patent and the hat claimed in the Blake patent is, that the body of the Daninos hat is not formed or shaped with embossed stripes by means of dies. The dies which act in conjunction with each other to emboss the body of the Blake hat, give it its ultimate shape at the same time that it is embossed—the shape which it has as the body of the completed hat in the completed hat.

The Brooman patent describes a waterproof hat made of two thicknesses of felt cloth, with a sheet of gutta percha between them, formed into a hat by pressure in a mould, while the gutta percha is in a plastic state. The hat is not embossed in imitation of straw or other braid, nor could it be.

The Osborn patent describes a machine to form, by the pressure of two dies, all kinds, shapes and sizes of bonnets and bonnet frames, the dies being heated, and the article being formed by a single impression. It is sufficient to say, that this patent does not describe a hat made of two or more thicknesses of fabric, nor a hat embossed to imitate straw or other braid.

The Harding patent describes a process of making hats by stamping or pressing them into form between a hollow heated matrix and a hollow heated plunger. The material is described as being "cloth, velvet, plush and other similar materials," dressed with a solution of adhesive material. The specification says, that, "where requisite, a lining may be stamped up with the cloth, at the same operation;" that a water-proof solution or composition may be "used to cause adhesion, when the lining is employed;" and that "it will be readily understood, that any pattern or device capable of being produced by stamping, may be applied to the article to be formed, by engraving or otherwise preparing the matrix and plunger, to produce the effect required." There is not in the Harding patent any suggestion of a hat em-

bossed in imitation of straw or other braid. It is very questionable whether such an embossed imitation could be made on cloth or velvet, or plush, or other similar material, even when dressed as suggested by Harding. The vague suggestion, that any device which is capable of being produced by stamping may be applied to the hat by engraving or otherwise preparing the matrix and plunger, to produce the effect required, is too general and indefinite. The burden of proof is on the defendants, to show the actual prior existence of a bonnet or other head covering answering the description of the claim of the Blake patent; and the Harding patent fails to show this.

The Roger and Ledion patent and the Mennons patent (the latter being subsequent in date to Blake's invention) describe a hat made to imitate straw, by compressing it in an electrotyped mould. A composition is made of collodion, pulverized cotton and castor oil, forming a pasty mass. The mould is obtained by depositing copper on the outer surface of a straw hat, by the electrotype process. The specification says: "The carcase of the hat or bonnet, formed in the ordinary way, of any convenient tissue, is coated on all sides with the plastic composition above described, and left to dry, after which it is placed in the electrotyped mould," and operated upon in a press, the inside of the hat being filled with discs of vulcanized caoutchouc, which act as an elastic piston, and force the plastic matter into the interstices of the mould. The strength of the defendants' case is mainly rested on this Roger invention communicated to Mennons. Criticism is made by the plaintiffs on the Roger specification, that it gives no description, suggestion, or hint, that the body or carcase of the hat is to be made of two thicknesses of' material, so as to form one compound body, such as is described in the Blake patent; and, that it teaches, that the carcase is to be formed before it is pressed between the embossing mould and the piston, and not that it is to be shaped by such pressure. To show what was understood in the art, at the date of the French patent, September, 1859, by the expression, in the specification of that patent, "the carcase of the hat or bonnet, formed in the ordinary way, of any convenient tissue," the defendants have introduced evidence proving that, as early as 1857, hat or bonnet frames were made of two or more thicknesses of muslin, stuck together by paste, and stamped into the shape of a hat by means of smooth dies, at one operation, the hat or bonnet frame, when completed, being seamless, and consisting of two or more thicknesses of muslin throughout. The frame, thus stamped into the shape of a hat, is the carcase of the hat, formed of a tissue, and must be regarded as being included in the word "carcase," as used in the Roger specification. In regard to

shaping the hat, Blake says, in his specification, that he first puts the cut-out pieces as nearly as practicable into form, over a suitable mould or former. They are then shaped by the action of the dies, the fabric assuming the shape of the male or lower die, at the same time that its surface is embossed by the female or upper die. The defendants first form their carcase or frame into the shape of a hat by smooth heated dies. In that condition, it is the carcase of Roger, formed in the ordinary way, known prior to 1859, of two thicknesses of muslin, united by an adhesive and stiffening substance, and stamped into shape by smooth dies, at one operation. The defendants then coat the carcase with a compound, as Roger does. They then have two dies of the same shape as the hat, the female or lower die being engraved on its inner surface, the upper or male die being smooth, the hat being placed in the female die, the entire inner surface of the hat being covered by a piece of india-rubber, and the male die, by its pressure against the india-rubber forcing the coated surface of the hat to take and retain the counter-shape of the engraved inner surface of the female die. In substance, this is the operation performed by Roger, the only difference being, that Roger makes his piston of india-rubber or caoutchouc discs serve the purpose of the defendants' male die and piece of india-rubber combined. But, from the nature of india-rubber, these instrumentalities in the two operations are the equivalents of each other, in their action in connection with the hat frame and the female die or mould, in the process of embossing the fabric. The Roger specification speaks of the composition as being reduced to shape in the mould. So, too, the defendants reduce to shape, in their female die, the compound which has been applied in two coats to the frame. Blake does not reduce any coating to shape, for he has no coating. His embossing is made directly on the surface of the muslin. He dispenses with a coating, and says, in his specification, that "the embossing itself gives to the muslin or other fabric the required stiffness." I am unable, therefore, to perceive that the defendants, in making the hats complained of, have done anything more than they are warranted in doing by the Roger and Ledion patent, assuming, as must be done for the purposes of this case, on the wording of the stipulation entered into by the parties, that that patent antedates Blake's invention.

In view of the Roger invention, as earlier than Blake's invention, the Blake patent, in order to be upheld as a valid patent, must be construed to be limited to a hat in which the embossing is made directly on the muslin, without the intervention of any coating, the required stiffness being given by the embossing itself, without the use of a coating, and the hat being lighter, by reason of the ab-

sence of the coating. On this construction, the patent is valid, but, as the defendants use a coating, they do not infringe it.

It follows, that the bill must be dismissed, with costs.

### On Rehearing.

After the foregoing decision was rendered, in September, 1871, the case was re-opened, in certain particulars, and further testimony was taken, and the case was reheard. The following decision was given in March, 1872.

George Gifford and Solomon J. Gordon, for plaintiffs.

George F. Langbein, for defendants.

BLATCHFORD, District Judge. A decision was rendered in this cause, in September, 1871, on final hearing, dismissing the bill. That decision proceeded upon the ground, that the defendants had not infringed two of the three patents sued on, namely, the re-issued patent to the Modena Hat Company, of April 30th, 1867, and the patent to John L. Kendall and R. H. Trestea, of February 9th, 1869. As to the third patent sued on, that to S. A. Blake, of December 24th, 1861, it was stipulated by the parties, that a French patent, granted to Roger and Ledion, September 15th, 1859, antedated the invention covered by the Blake patent, and the court held that the defendants, in making the hats complained of, had not done anything more than they were warranted in doing by the description furnished, under such stipulation, as the description contained in the Roger and Ledion patent. The court also held, that, in view of the Roger and Ledion patent, as earlier, the Blake patent, in order to be upheld as a valid patent, must be construed to be limited to a hat in which the embossing is made directly on the muslin, without the intervention of any coating, the required stiffness being given by the embossing itself, without the use of a coating, and the hat being lighter by reason of the absence of the coating; but that, on such construction, the defendants did not infringe the patent, as they used a coating.

Before any decree was entered on that decision, it was discovered by the parties, that the description on which they and the court had acted, as the description contained in the French patent to Roger and Ledion, of September, 1859, was not the description contained in that patent, but was, to a considerable extent, in substance, the description contained in a French patent granted to Roger and Ledion July 19th, 1860. The only patent to Roger and Ledion, set up in the answer as antedating the Blake invention, is that of September, 1859. By consent of the parties, and on the order of the court, the case was reopened, so far as to admit of the taking of testimony to determine whether or not the hats made by the defendants infringe the Blake patent, in view of the Roger and Ledion French patent of September, 1859,

and for further argument on the question of infringement and the proper effect to be given to such French patent, in determining that question. The defendants also had leave to introduce evidence of any additional matter of defence set up in the answer, but not theretofore relied upon and presented to the court, which they might see fit. Further testimony has been taken and the case has been reheard. The conclusion having been reached, in the former decision, that, in view of what was then understood to have been the Roger and Ledion patent of September, 1859, the bill must be dismissed, there were several matters of defence developed in the proofs, which were not considered or passed upon by the court, and which are now open for consideration.

The invention of Blake is not carried back to a date earlier than December 31st, 1859. It is shown, on the part of the defendants, that, as early as 1857, hat or bonnet frames were made of two or more thicknesses of muslin, stuck together by paste, and stamped into the shape of a hat, by means of smooth dies, at one operation, the hat or bonnet frame, when completed, being seamless and consisting of two or more thicknesses of muslin throughout. It is also shown, that, in the spring of the year 1859, hats and bonnets were made out of two-ply and three-ply buckram, (that is, two or three thicknesses of muslin stuck together by starch,) covered with satin, silk or velvet, by means of dies, at one operation, so that, when finished, the hat or bonnet was of one piece, seamless, and consisted of two or three thicknesses of muslin throughout, covered all over with silk, satin or velvet. It is also shown, that it was no new thing, at the date of Blake's invention, to stamp paper, and to stamp such two and three-ply buckram, in imitation of straw braid, to be used in making bonnets, by means of flat engraved plates or dies. It is claimed, on the part of the plaintiffs, that, according to the description in the specification of the Blake patent, the product of the action of the dies is the completed body of a bonnet, embossed in imitation of straw, and fit for use as the body of a bonnet, in the shape given to it by the dies, and without further ornamenting or covering its surface; and that it is not merely a frame, or carcase, or skeleton, requiring to be afterwards covered or ornamented, to make its exterior surface so comely and presentable as to be salable as a bonnet; and, further, that it is not merely a fabric having the completed exterior surface necessary in the bonnet salable as such, but not shaped into its ultimate shape by dies, and requiring further manipulation to put it into such ultimate shape. I think these views of Blake's invention are correct, and that the proper construction of the claim of his patent is, that it claims a bonnet, the body of which is embossed, in imitation of straw or other braid, by dies, which, at the same time, give to it its ulti-

mate shape, such body being made of two or more thicknesses of muslin or other suitable fabric, united by starch or other suitable adhesive and stiffening substance. None or the articles above mentioned as prior inventions anticipate Blake's invention, on this construction of his claim, which is the construction which, in the former decision, I adopted as the proper one, aside from what was then supposed to be shown by the Roger and Ledion patent of 1859. The article produced according to the Blake invention is new and useful, an improvement in the trade, and patentable.

The hat testified to by Shaw as existing in 1857 is too vaguely deposed to. It is not shown how it was, in fact, made. It is not produced. All that there is is the casual observation of it by a person who calls back his recollection of it fourteen years afterwards, and who says it was made, in one piece, of muslin, with a surface of paper in imitation of Leghorn braid, and that it had the appearance of having been shaped, and put into imitation of Leghorn braid, by the use of engraved dies, at one process. Such evidence cannot be admitted as sufficient to invalidate the Blake patent.

This leaves to be considered only the Roger and Ledion patent of 1859. According to the true text of that patent, now produced, there is no suggestion in it of the making of a bonnet by dies, in imitation of straw braid, out of two or more thicknesses of muslin, united into one fabric by starch or other adhesive and stiffening substance. The patent indicates the mould or die, of proper form, and arranged to produce the imitation of straw on "a fabric of flax or cotton," impregnated with pasty collodion, and speaks of making hats in that way. The patent of Blake makes it an essential point that the bonnet shall be made of two or more thicknesses of fabric, united into a sheet by starch or other suitable adhesive and stiffening material. The importance of using such stiffening material is dwelt on, and the fact that the bonnet, when embossed, has a stiffness of fabric, and, at the same time, a lightness. The evidence shows that there is an advantage, in cheapness of manufacture and in flexibility during manufacture, in using a fabric thus made of two thicknesses, over the use of a single fabric of equal thickness with the two.

The defendants' bonnet is made in the same way as the bonnet of the Blake patent, in all the features of the claim of that patent. It is made of three thicknesses of muslin, united by starch, and is shaped by dies which, at the same time, emboss it in imitation of straw braid. The fact that the defendants put a coating on the muslin frame before subjecting it to the final action of the dies, does not make the product any the less the Blake product. It is shown, that, in the defendants' bonnet, corrugations are formed in the fabric itself, by the dies, though to an extent diminished by the thickness of the coating. Adequate stiffness can be given by embossing directly on the muslin, without any coating. But the required stiffness is given when a coating is used.

There must be a decree for the plaintiffs, for a perpetual injunction and an account of profits, as respects the Blake patent, with costs, with a reference to a master to take the account.

[NOTE. The case of the same plaintiffs against Barnard, published as a note to the principal case, as reported in 9 Blatchf. 509, is reported herein, sub nom. Baldwin v. Barnard, Case No. 797.]